**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(609) 989-2182

| | |
|---|---|
| CHAMBERS OF<br>FREDA L. WOLFSON<br>CHIEF JUDGE | Clarkson S. Fisher Federal<br>Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 |

**LETTER ORDER**

December 19, 2022

Eric T. Kanefsky, Esq.
Calcagni & Kanefsky LLP
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102

Michael D. Fitzgerald, Esq.
Law Office of Michael D. Fitzgerald
1 Industrial Way West, Unit B
Eatontown, NJ 07724

      RE:   *Dilello v. Hackensack Meriden Health et al.*,
               Civ. Action No. 20-02949 (FLW)

Counsel:

      In this *qui tam* action, Relator Keith A. Dilello, Sr. ("Relator" or "DiLello") sues numerous healthcare providers alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. In my prior Order and Opinion dated April 29, 2022, I dismissed Relator's original Complaint against Defendants Hackensack Meridian Health ("HMH"), Jersey Shore University Medical Center ("JSUMC"), and Ocean Medical Center ("OMC") (together, "Defendants"), pursuant to a motion to dismiss filed by Defendants. Relator was given leave to amend his Complaint, which he did by filing an Amended Complaint. Defendants now move to dismiss that complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

      For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

**I.   BACKGROUND**

As the instant motion to dismiss only involves three of the named defendants,[1] the factual background is limited to the three moving defendants' involvement as alleged in the Amended Complaint.

On September 5, 2014, New Jersey resident DiLello was involved in a car accident. (ECF No. 39, Amended Complaint ("Am. Compl."), ¶ 16.) At the time of the accident, Relator was covered by a no-fault personal injury protection ("PIP") policy issued by New Jersey Manufacturers Insurance Company ("NJM"). (*Id.* ¶ 17.) Following the car accident, Relator was transported to defendant JSUMC, a hospital within defendant HMH's system, (*Id.* ¶¶ 18, 19.) The following year, on September 16, 2015, Relator underwent a surgical procedure related to the car accident at defendant OMC, another hospital within the HMH system. (*Id.* ¶¶ 19, 65.)

On March 17, 2020, Relator filed the original Complaint asserting four causes of action: violation of and conspiracy to violate the federal and New Jersey False Claims Acts. (ECF No. 1.) On September 2, 2021, Defendants[2] filed a Motion to Dismiss Relator's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 25.) By Order and Opinion dated April 29, 2022, I granted Defendants' motion to dismiss and permitted Relator leave to amend his original Complaint within 30 days. (ECF No. 37, "April 29 Opinion".) Thereafter, Relator filed an Amended Complaint asserting the same federal causes of action, (ECF No. 39), and Defendants filed the present Motion to Dismiss. (ECF No. 44.)

### a. The Original Complaint and April 29 Opinion

The original Complaint alleged that, in connection with medical treatments arising from this car accident, Defendants improperly billed, and received, payment for medical services from both Relator's primary insurer, NJM, and the Center for Medicare and Medicaid Services ("CMS") for the same service during the same dates and times. (ECF No. 1 ¶¶ 22–24.) Even after Defendants received payment from NJM, the Complaint alleged that Defendants failed to return the CMS payments it received for the same underlying bills. (*Id.* ¶ 33.)

Previously, in my April 29 Opinion dismissing the Complaint for failing to allege a claim under the FCA against Defendants, I found several deficiencies in the Complaint. (ECF No. 37.)

For HMH, this Court found that the Complaint failed to distinguish between HMH and JSUMC. The Complaint failed to allege any independent allegations of improper billing or

---

[1] Defendants Seaview Orthopaedics, Dr. Halambros Demetriades, Dr. Theodore Kutzan, Dr. Adam Myers, Dr. Hoan-Vu Nguyen and Dr. Frederick De Paola (together, "Seaview Defendants") separately moved to dismiss the Amended Complaint on November 30, 2022. (ECF No. 53.) The non-moving defendants, Dr. Corey Smith, and Dr. Leonard Zawodriak were not previously named in the original Complaint. (ECF No. 1.) The Amended Complaint alleges Dr. Smith to be employed by JSUMC, (Am. Compl. ¶¶ 3, 79–82), and Dr. Zawodriak to be a radiologist without further specification. (Am. Compl. ¶¶ 10, 95–96.) It does not appear that defendants Smith and Zawodriak were properly served. Relator is directed to show cause, in writing, on or before January 3, 2022, as to why defendants Smith and Zawodriak should not be dismissed for failure to serve pursuant to Fed. R. Civ. P. 4.

[2] Now-dismissed defendants Kessler Rehabilitation and Shrewsbury Surgery separately moved to dismiss the original Complaint on September 2, 2021, (ECF Nos. 23, 24), which motions were both granted by this Court in its April 29 Opinion. (ECF No. 37.) Relator did not replead against either in his Amended Complaint. (Am. Compl.)

payments received by HMH. Thus, Relator's allegations with respect to HMH amounted to an impermissible group pleading. (*Id.* at 8 n.2.)

For JSUMC, this Court found that the Complaint's allegations failed to plausibly plead that the Conditional Payment Exception, 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii), did not apply. (ECF No. 37, at 12–13.) Under this exception, CMS may make a conditional payment when a primary plan "has not made or cannot reasonably be expected to make payment…promptly". 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii). "Prompt" payment is defined as payment made within 120 days of either the date on which care was provided or when the claim was filed with the insurer, whichever is earlier. *See* 42 C.F.R. §§ 411.21, 411.50. Because NJM ultimately issued payment in July 2015 after the 120-day "prompt" period from the date of discharge had passed, this Court found that CMS's payment was valid under the Conditional Payment Exception. (ECF No. 37 at 14.) Aside from the alleged July 2015 payment by NJM, the Complaint and its exhibits failed to plead other facts or allegations that "suggest CMS fraudulently paid the bill within the prompt pay period before NJM, or after NJM paid in full the allowable amount under the fee schedule". (*Id.*) With respect to Relator's reverse FCA claim, I also found that Relator failed to allege non-payment by JSUMC despite notice, such as the inclusion of allegations of collection attempts or other statements from CMS. (*Id.* at 20.)

For OMC, this Court found that the Complaint failed to allege that CMS ever paid OMC. Without such allegation, no inference could be made that CMS suffered an economic loss as a result of a claim submitted by OMC. (*Id.* at 15.)

With respect to the materiality of all allegations against Defendants, I also found that the Complaint failed to allege that CMS would have refused to pay the claims at issue had it known of Defendants' improper billing practice. (*Id.* at 16.) For instance, the Complaint alleged that Defendants "routinely engage[d]" in double billing and yet, in every alleged improper payment example cited by the Complaint, Relator alleged CMS did pay Defendants. (*Id.* at 16–17.)

Relator attempts to cure these deficiencies through his Amended Complaint.

### b. *The Amended Complaint*

In support of substantially the same allegations of double billing of NJM and CMS by Defendants, (Am. Compl. ¶¶ 22–23), Relator alleges the following "double" billings instances with respect to each defendant as set forth by the Amended Complaint and its attached exhibits:

- JSUMC billed NJM and CMS a total of $30,623 for Relator's three-day hospital stay from September 5, 2014 through September 8, 2014. (*Id.* ¶ 47.) The final approved amount under the New Jersey Fee Schedule for NJM was $19,106.91. (*Id.*, Ex. A ("NJM PIP Pay Ledger").) JSUMC allegedly received a total of $42,459.82 from NJM and CMS, (*id.* ¶ 47), including $19,106.91 and $4,246 from NJM on July 22, 2015 and October 13, 2015 respectively. (*Id.*, Ex. A.)

- OMC billed NJM and CMS each $141,337 for the medical procedure Relator underwent on September 16, 2015. (Am. Compl. ¶ 66.) CMS was billed on

3

September 21, 2015 and NJM was billed December 15, 2015. (*Id.*) The final approved amount under the New Jersey Fee Schedule for NJM was $34,634.82. (*Id.*, Ex. A.) CMS allegedly paid $28,759.40 on October 19, 2015. (*Id.* ¶ 67; Ex. B ("CMS Payment Summary Form"); Ex. G at 3 ("OMC Bill").) NJM allegedly paid $34,634.82 for the procedure on February 13, 2017. (*Id.* ¶ 67.)

Relator averred that, as a result of Defendants' alleged double billing, CMS sought $26,487.16 in repayment from Relator's personal injury recovery for the $40,354.63 total amount it paid. (Am. Compl. ¶ 24; Ex. B.) In essence, Relator argues that he should not have to repay CMS from his settlement because (1) CMS never should have been billed and (2) the sums were "paid twice by CMS and NJM." (*Id.* ¶¶ 24, 47, 48, 68–71.)

Further, the Amended Complaint now alleges additional fraudulent activity by Defendants in connection with CMS payments they allegedly received under Value Based Purchasing ("VBP") programs. (*Id.* ¶¶ 56, 74.) At issue are "2% payment from CMS for a Value Based Purchasing Program (VBP) based on the CMS payment for PIP or workers compensation related treatment". (*Id.* ¶¶ 49, 78.)

According to the Amended Complaint and its attached exhibits, Relator alleges Defendants received the following "VBP payments" from CMS:

- JSUMC allegedly received a 2% VBP payment of $104.27 on April 6, 2015. (*Id.* ¶ 56; Ex. D at 8 ("JSUMC Bill").) This amount is "based on" the $5,109.04 conditional payment by CMS on the same date. (*Id.* ¶ 56; Ex. D at 8.)[3]

- OMC allegedly received a 2% VBP payment of $586.93 on October 19, 2015. (Am. Compl. ¶ 74; Ex. G, at 3.) This amount relates to the $28,759.40 conditional payment by CMS on the same date. (*See id.* ¶ 75; Ex. G at 3.)[4]

Relator alleges that Defendants were required to return the 2% VBP payments which they did not. (*Id.* ¶¶ 49, 78.) Defendants' subsequent failure to return the VBP payments to CMS, Relater asserts, constituted fraud against CMS. (*Id.* ¶¶ 57, 74.) Relator claims that CMS could not have known about Defendants' improper retention of the VBP payments. (*Id.* ¶¶ 62, 76.)

## II. <u>LEGAL STANDARD</u>

A court may dismiss an action under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

---

[3] The Court notes that 2% of $5,109.04 is equal to $102.18, not $104.27.
[4] The Court notes that 2% of $28,759.40 is equal to $575.19, not $586.93.

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that "are not entitled to the assumption of truth" because they are no more than conclusions. *Id*. at 131 (quoting *Iqbal*, 556 U.S. at 679). For instance, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

An FCA complaint must also meet Fed. R. Civ. P. 9(b)'s heightened pleading standard. *See United States ex rel. Petras v. Simparel*, Inc., 857 F.3d 497, 502 (3d Cir. 2017). In general, Rule 9(b) requires a plaintiff "to plead fraud with particularity, specifying the time, place and substance of the defendant's alleged conduct." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc*., 149 F.3d 227, 234 (3d Cir. 1998); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (holding that a plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud) (citation omitted). In the FCA context, however, a plaintiff must provide only "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal, Ventures Mgmt*., LLC, 754 F.3d 153, 157–58 (3d Cir. 2014). A plaintiff need not show "the exact content of the false claims in question," as "requiring this sort of detail at the pleading stage would be one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates." *Foglia*, 754 F.3d at 156 (quotations and citation omitted).

### III.  DISCUSSION

Relator's Amended Complaint fails to cure the deficiencies this Court found in the April 29 Opinion dismissing claims against Defendants.[5] As such, I find that Relator fails to sufficiently plead a plausible claim under the FCA against Defendants.[6]

---

[5] The Court incorporates its discussion from its April 29 Opinion here by reference. (ECF No. 37.)

[6] In the April 29 Opinion, this Court dismissed HMH as a defendant because the Complaint failed to allege any independent allegations of improper billing or payments received by HMH. (ECF No. 37 at 8 n.2.) Here, Relator again fails to distinguish between HMH and JSUMC nor does he assert any new allegations as to specific acts undertaken by HMH. (*See, e.g.*, Am. Compl. ¶ 48 ("JSUMC and HMHN"); ¶ 53 ("JSUMC and/or HMHN").) Nor do the additional exhibits attached to the Amended Complaint list HMH as a payee or provider. (*See* Am. Compl., Ex. A, Ex. B.) Relator argues that because he has pleaded that JSUMC and OMC "operate under the umbrella, if not the direct auspices, of HMHC", (Pl. Opp. Br. at 22), Relator is somehow relieved from the individual pleading

B.  **False Claim**

   *a. Allegations of Double Billing*

This Court previously rejected Relator's double billing allegations against Defendants on the grounds that Relator failed to plausibly allege falsity and materiality. (ECF No. 37 at 14, 15, 17.) In the Amended Complaint, Relator generally reasserts his double billing allegations from the original Complaint against Defendants. (Am. Compl. ¶¶ 49, 78 (alleging that Defendants violated the FCA by (1) billing CMS for services Defendants knew would be paid by Relator's insurer and (2) failing to return CMS payments upon receiving payment from Relator's insurer).)

In its prior Opinion, with respect to JSUMC, this Court found the Complaint's allegations insufficient to plead falsity because CMS's payments were valid under the Conditional Payment Exception, 42 U.S.C. § 1395y(b)(2)(B)(i)–(ii). (ECF No. 37 at 12–14.) Neither party had disputed that the date of service was September 5 through September 8, 2014, or that in July 2015, long after the 120-day prompt period had passed, NJM issued payment. (*Id.* at 14.)

Here, the Amended Complaint fails to include any new allegations supporting the inapplicability of the Conditional Payment Exception. As such, Relator again fails to plead any other facts or allegations that suggest JSUMC acted in violation of the Conditional Payment Exception. For example, allegations that CMS fraudulently paid the bill within the prompt pay period before NJM, or after NJM paid in full the allowable amount under the fee schedule. (*See* ECF No. 37 at 14.)[7] The Amended Complaint fails to cure the deficiencies in Relator's double-billing allegations against JSUMC.

Previously, this Court dismissed OMC as a defendant because Relator failed to allege that CMS suffered an economic loss as a result of a claim submitted by OMC. (ECF No. 37 at 15.) Relator did not allege that CMS ever paid OMC nor was OMC listed on the CMS Payment Summary Form attached to the original Complaint. (*See id.*)

In the Amended Complaint, Relator does now plead that CMS paid OMC. Relator alleges that OMC billed CMS on September 21, 2015 and was paid $28,759.40 on October 19, 2015. (Am. Compl. ¶¶ 66, 67; Ex. B; Ex. G at 3.) NJM was allegedly billed on December 15, 2015 and paid $34,362.82 for the procedure on February 13, 2017. (*Id.* ¶¶ 66, 67; Ex. A.) Unlike the allegations against JSUMC, because Relator alleges OMC first billed CMS before billing NJM, the Conditional Payment Exception, 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii), is inapplicable as to OMC. (*See* ECF No. 37 at 13–14.)

Nevertheless, Relator's allegations are insufficient to sustain a submission of a false claim by OMC. Rule 9(b) typically requires plaintiffs to allege fraud to support their allegations "'with all of the essential factual background that would accompany the first paragraph of any

---

requirements with respect to HMH. But that cannot be the case. The complaint must "specify which defendants performed which acts." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016); *see also United States ex rel. Bennett v. Bayer Corp.*, No. 174188, 2022 WL 970219, at *7 (D.N.J. Mar. 31, 2022) (finding allegations that fail to distinguish between distinct defendant entities amount to an impermissible group pleading). Thus, for the same reasons set forth in the April 29 Opinion, HMH is dismissed.

[7] Further eroding Relator's double-billing allegations against JSUMC, Relator alleges that JSUMC did repay CMS for its conditional payment. (*See* Am. Compl. ¶ 54 ("JSUMC and/or HMHN did not repay CMS until 3/14/16").)

newspaper story—that is the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 217). In this case, Relator argues that OMC should not have billed CMS for his surgical procedure on September 16, 2015 when OMC was "well aware of the fact that [NJM] will pay". (Am. Compl. ¶ 71.) Beyond this allegation that CMS was billed by OMC, Relator provides no additional facts to suggest such a billing was improper or unnecessary such that it would amount to a false claim made to the Government.[8] Accordingly, Relator has not plausibly alleged a submission of a false claim by OMC.

### b. Allegations of Failures to Reimburse Overpaid Amounts

As he did in his original Complaint, Relator reasserts his allegations that Defendants violated the FCA by allegedly failing to return payment to CMS within 60 days of receiving payment from NJM. (Am. Compl. ¶¶ 64, 78.) As I found in the April 29 Opinion, failure to reimburse CMS cannot serve as the basis for an affirmative FCA violation on its own and the Medicare Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y, *et seq*. explicitly anticipates late payments beyond the 60-day repayment window. (ECF No. 37 at 14–15 n.7 (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)).) Further, the Amended Complaint and its exhibits appear to evince both JSUMC and OMC have already reimbursed CMS for their respective conditional payments of $5,109.04 and $28,759.40. (Am. Compl. ¶ 54 ("JSUMC and/or HMHN did not repay CMS until 3/14/16"); Ex. D at 12 (reflecting that on March 14, 2018, JSUMC made a "Medicare Payment" for $5,109.04); Ex. G at 7 (reflecting that on March 6, 2017, OMC made a "Medicare Payment" for $28,759.40).) As such, Relator's claims for failure to reimburse cannot be sustained.

### c. Allegations of Improperly Retaining VBP Program Payments

Relator's additional allegations relating to the 2% VBP payments are also without merit. The relevant VBP program, the hospital value-based purchasing program, is established and governed under 42 U.S.C. § 1395ww(o). Its purpose is to provide value-based incentive payments to hospitals that meet certain performance standards each fiscal year. *See* 42 U.S.C. § 1395ww(o)(1)(A). The 2% VBP payments referenced by Relator are the payments hospitals pay

---

[8] Defendants argue, based on the exhibits and the pleadings, that OMC initially submitted a claim to CMS because it reasonably believed that the underlying surgical procedure was not related to Relator's car accident. (Def. Br. at 13–14, 23.) Nor was it aware that NJM was the primary payer to be billed. (*Id.* at 14.) Such was a reasonable belief, Defendants assert, because Relator failed to indicate so on his initial Medicare questionnaire dated September 10, 2015. (*See* Def. Br., Kanefsky Cert., Ex. 4 ((reflecting no responses by Relator to the questions "Is this a result of an accident" and "Will someone else be responsible for bill").) And once OMC learned that the procedure was related to the accident and that NJM was the primary carrier, Defendants argue that it promptly billed NJM the following day. (Def. Br. at 14.) Indeed, OMC's bill appear to support Defendants' explanation of the alleged FCA violation. On December 14, 2015, OMC's bill reflects receipt of an email from Relator's surgeon informing OMC that the bill was related to the accident. (Am. Compl., Ex. G at 4 ("REC'D EMAIL FROM MMA – PER DR NGUYEN THIS IS MVA RELATED.").) Subsequently, the OMC bill reflects the process within OMC to reimburse CMS for its prior payment. (*Id.* at 6 ("MEDICARE PAID IN EXCESS OF $28759.40 … BILLER NEEDS TO REVIEW AND REVERSE THE MEDICARE PAYMENT OF $28759.40.").) The OMC bill reflects such reimbursement was made on March 6, 2017. (*Id.* at 7.) In that regard, the fact that OMC was initially unaware that NJM was the appropriate payer to be billed is a reasonable explanation for the alleged CMS payments at-issue. *See United States v. Omnicare, Inc.*, 903 F.3d 78, 91–92 (3d Cir. 2018) (explaining that "the possibility of a legitimate explanation undermines the strength of the inference of illegality.").

to fund the program's incentive-based payouts to high-achieving hospitals. *See id.* § 1395ww(o)(7)(B)-(C) (stating that, after 2017, the amount per discharge that hospitals pay into the program is reduced by 2% each year).

Here, Relator alleges that JSUMC received a VBP payment of $104.27 in addition to its $5,109.40 conditional payment from CMS. (Am. Compl. ¶ 56.) And OMC received a VBP payment of $586.93, in addition to its $28,759.40 conditional payment from CMS. (*Id*. ¶ 74.) And because Defendants failed to return these VBP payments to CMS, Relater argues that Defendants violated 42 C.F.R. § 401.305, which requires that a "person that has received an overpayment must report and return the overpayment in the form and manner set forth in this section." Further, Relator argues that Defendants were "affirmatively obligated to return" the VBP payments "when they failed to 'exercise reasonable diligence' under § 401.305(a)(2). (*Id.* ¶¶ 64, 78.)

Defendants dispute this allegation and argue that neither JSUMC nor OMC received the VBP payments that Relator alleges they failed to return. (Def. Br. at 12–13, 14.) This Court agrees with Defendants in finding Relator's new allegations to be implausible.

First, Relator's allegation that these VBP payments were paid by CMS to Defendants directly contradicts the text of the statute. The relevant statute clarifies that the payments are meant to be paid by the hospitals into the program to fund it. *See* 42 U.S.C. § 1395ww(o)(7). This understanding is supported by the exhibits attached to the Amended Complaint. For JSUMC, Defendants cite to the JSUMC Bill which they argue reflects that CMS reduced the total conditional payment of $5,213.31 by 2% or the sum of $104.27. (Def. Br. at 13 (citing Am. Compl., Ex. D at 8) (containing a line-item, "MC 2% PMT RED", dated April 6, 2015, for $104.27.)) For OMC, Defendants cite to the OMC Bill to support their argument that the conditional payment of $29,346.33 was reduced by 2% or $586.93. (Def. Br. at 14 (citing Am. Compl., Ex. G at 3) (containing a line-item, "MC 2% PMT RED", dated October 19, 2015, for $586.93.)) In other words, the VBP payments were not payments received by Defendants from CMS, but rather they reduced the total conditional amount that the Defendants received from CMS. Plainly, Relator's mistaken beliefs regarding the VBP payments cannot be the basis for his claims.

### d. Materiality

In its prior Opinion, the Court also found that Relator's Complaint also failed to satisfy the FCA's materiality requirement. (ECF No. 37 at 15–17.) Specifically, I found that the Complaint failed to allege that CMS would not have paid the claims at issue had it known that NJM was Relator's primary insurer and that NJM had paid a portion of, or the entirety of, some claims. (*Id*. at 16.)

Here, the Amended Complaint again fails to sufficiently allege that Defendants' alleged FCA violations were material. Relater alleges that had CMS known about the alleged common industry practice in New Jersey, such that NJM's delayed payments encouraged providers— including Defendants—to first bill CMS, CMS may have delayed payment to Defendants. (Am. Compl. ¶ 40.) Relator alleges that "industry practice in New Jersey" was such that nearly all providers of health services had to wait "months, if not years" to be paid by insurers. (*Id.* ¶ 38.)

8

Relator alleges that since "providers are well aware of [this] industry norm", (*id.* ¶ 37), and "there is no real enforcement of the obligation to repay conditional payments [to CMS]", (*id.* ¶¶ 64, 78),[9] Defendants chose to "bill CMS quickly because it [was] easier to get paid." (*Id.* ¶ 38.) Even assuming *arguendo* that Relator had sufficiently pled the existence of such industry practice, Relator still has not adequately alleged materiality.

First and foremost, as discussed *supra*, under the Conditional Payment Exception, 42 U.S.C. § 1395y(b)(2)(B)(i)–(ii), Defendants were allowed to request conditional payment from CMS when NJM failed to make its payment within the 120-day period commencing from the date of treatment. As pled in the Amended Complaint, NJM made its ultimate payment after the 120-day period had passed. (*See* Am. Compl., Ex. A.) As such, Defendant JSUMC was allowed, under statute, to request payment from CMS, and it did. And for Defendant OMC, as discussed *supra* n.8, based on the pleadings and exhibits to the Amended Complaint, it appears OMC was initially unaware that NJM was the appropriate payer to be billed. In any event, Relator's newly pleaded allegations provide no support to the sufficiency of his false claims against JSUMC or OMC. Relator asserts no facts or provides no support that (1) CMS was aware of such a widespread industry practice of delayed payments, and (2) that such knowledge would have been a motivating factor in CMS's decision to pay either JSUMC or OMC. Relator's claims against Defendants fail the materiality requirement.

### C. Reverse False Claim Allegations Against JSUMC and OMC

In its prior opinion, the Court held that Relator failed to state a plausible reverse FCA claim under 31 U.S.C. § 3729(a)(1)(G) against JSUMC or OMC. (ECF No. 37 at 20.) Here, I also find that Relator's claims fall short of alleging the necessary elements for a reverse FCA claim.

To bring a claim under § 3729(a)(1)(G), "a plaintiff must allege that (1) there is an obligation to pay or transmit money or property (2) to the Government, which the defendant (3) knowingly and improperly (4) avoided or decreased." *United States v. Simparel, Inc.*, No. 13-2415, 2015 WL 7313861, at *5 (D.N.J. Nov. 20, 2015), *aff'd sub nom. United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497 (3d Cir. 2017).

Again, Relator's claims fall short of alleging the necessary elements. Relator still fails to allege that, as of today, upon being put on notice of the alleged non-payment, JSUMC and OMC still have not repaid CMS the conditional payments of $5,109.04 and $28,759.40 respectively. (*See* ECF No. 37 at 20.) In fact, as discussed *supra*, both the Amended Complaint and the exhibits attached thereto seemingly support the fact that both defendants already reimbursed CMS for their respective payments. (*See* Am. Compl. ¶ 54 ("JSUMC and/or HMHN did not repay CMS until 3/14/16"); Ex. B at 7, 8.) Given this, I find that the Amended Complaint fails to allege that Defendants, "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay" the Government. 31 U.S.C. § 3729(a)(1)(G).

---

[9] Plaintiff also pleads that "CMS aggressively enforces the repayment of the 'conditional payment'." (*See, e.g.*, Am. Compl. ¶¶ 63; 77.)

Relator also argues that Defendants was "affirmatively obligated to return" the VBP payments "when they failed to 'exercise reasonable diligence' in keeping with 42 CFR 401.305." (Am. Compl. ¶¶ 64, 78); 42 C.F.R. § 401.305 (requiring return of "overpayment" from a government healthcare program within 60 days after it is "identified"). However, as discussed *supra*, Relator failed to plausibly allege that JSUMC and OMC received or failed to return the VBP payments. Thus, because there are no plausible allegations to support an "overpayment", § 401.305 is inapplicable here.

## IV. CONCLUSION

For these reasons, I **GRANT** Defendants' Motion to Dismiss. Relator's claims are dismissed with prejudice. Relator is directed to show cause, in writing, on or before January 3, 2023, regarding why defendants Smith and Zawodriak should not be dismissed for failure to serve pursuant to Fed. R. Civ. P. 4.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge